b

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| **DARRELL EUGENE CLARK,** Plaintiff | **CIVIL DOCKET NO. 1:20-CV-01581** |
| **VERSUS** | **DISTRICT JUDGE JOSEPH** |
| **CITY OF ALEXANDRIA, ET AL.,** Defendants | **MAGISTRATE JUDGE PEREZ-MONTES** |

## REPORT AND RECOMMENDATION

Plaintiff Darrell Eugene Clark ("Clark") filed a Motion to Amend Complaint. ECF No. 11. Defendants oppose that Motion. ECF No. 13. Clark's Motion to Amend (ECF No. 11) is DENIED IN PART AND GRANTED IN PART:

(1) because the single-filing rule does not apply to Clark's EEOC complaint, and some claims Title VII claims are time-barred, Clark's Motion to Amend to add Title VII claims should be GRANTED as to Reginald Cooper, and DENIED as to Glenn Hall, Cruz, Parker, Martin Williams, Horn, Love, Simmons, Franklin, Casey, Hood, Jones, Reed, Mechelle Williams, Green, Len Hall, and Kirk;

(2) because some claims are time-barred, Clark's Motion to Amend Complaint (ECF No. 11) should be GRANTED as to Clark's § 1983, LEDL, and LCHRA claims for Reginald Cooper, Green, Glenn Hall, Hood, Love, and Horn, and DENIED as to Cruz, Parker, Martin Williams, Simmons, Franklin, Casey, Jones, Reed, Mechelle Williams, Len Hall, and Kirk;

(3) because they were unopposed, Clark's Motion to Amend Complaint should be GRANTED as to the claims pursuant to 18 U.S.C. 2511 and La. R.S. 23:332;

(4) because it was unopposed, timely, and related, Clark's Motion to Amend Complaint (ECF No. 11) to add Patrick Ramon VanDyke and Christopher Louis Cooper as Defendants should be GRANTED;

(5) because Clark does not meet the numerosity requirement, his Motion to Amend Complaint (ECF No. 11) to add a class action should be DENIED; and

(6) because it was unopposed, Clark's Motion to Amend Complaint (ECF No. 11) should be GRANTED as to Clark's, Cooper's, and Green's claims pursuant to 18 U.S.C. § 1513 and La. R.S. 23:967.

## I.   Background

### A.   Procedural Background

Clark filed a Complaint against the City of Alexandria ("the City"), Daryl Louis Terry ("Terry") (Commissioner of Public Safety for the City of Alexandria), and Jarrod Daniel King ("King') (Chief of the Alexandria Police Department ("APD")), alleging claims of racial discrimination pursuant to Title VII, § 1983, and La. R.S. 23:967 (the whistleblower statute).  ECF No. 1.

Clark, an African-American, alleges in his Complaint that he was employed with the APD from 1992 through June 24, 2020.  Clark was discharged from his employment as a Lieutenant with the APD following his participation in an investigation.  Clark asserts claims for racial discrimination under 42 U.S.C. § 1981, retaliation under 18 U.S.C. § 1513, and whistle-blower protection violations under La. R.S. 23:967.  Clark seeks monetary damages (including punitive), attorney fees, and costs.

Defendants answered the Complaint.  ECF No. 6.  Clark filed a Motion to Amend Complaint to add new Plaintiffs, Defendants, and claims, and to allege a class action (ECF No. 11).  Defendants oppose that Motion (ECF No. 14).

Clark seeks to add as new Plaintiffs: Reginald David Cooper, Cedric Linbert Green, Glenn Hall, Len Hall, Juan Carlos Cruz, Vincent Parker, Martin Williams, Marcus Kirk, Remona Casey, Richard George Franklin, Jr., Kaster Jones, Deric Dionell Reed, Markiz Marty Hood, Tyrica Love, Kerry Simmons, Mechelle Williams, and Alton James Horn.[1]

Clark seeks make the new Plaintiffs the class representatives. The proposed new Plaintiffs are all non-Caucasian current employees of the APD, former employees of the APD, or rejected applicants for employment with the APD.

Clark also seeks to add two new Defendants: Christopher Louis Cooper and Patrick Ramon Vandyke.

Clark seeks to add new claims pursuant to 18 U.S.C. § 2511, La. R.S. 51:2231, and La. R.S. 23:332.

In the Amended Complaint, Clark alleges claims pursuant to: (1) 42 U.S.C. § 1983 on behalf of all Plaintiffs and the African American and Hispanic class members; (2) Title VII, on behalf of all Plaintiffs and the class; (3) 18 U.S.C. § 1513 ("Retaliating against a witness, victim or an informant") on behalf of Plaintiffs Clark, Cooper, and Green; (5) 18 U.S.C. § 2511 ("Interception and disclosure of wire, oral, or electronic communications prohibited") on behalf of Clark, Cooper and Green; (6) La. R.S. § 23:967 (Louisiana Whistleblower Statute) on behalf of Clark,

---

[1] It is unclear whether Clark is moving to add Reed and Mechelle Williams as Plaintiffs, or is only discussing incidents of alleged discrimination against them as examples. For purposes of this Motion to Amend, they will be considered as potential plaintiffs.

Cooper and Green;  (7) La. R.S. § 23:332 (Louisiana Employment Discrimination Law ("LEDL")) on behalf of all Plaintiffs and class members; and (8) La. R.S. § 51:2231 (Louisiana Commission on Human Rights Act ("LCHRA")) on behalf of all Plaintiffs and class members.  ECF No. 11-2.

### B.    Plaintiff's Motion to Amend to add new Plaintiffs

#### 1.    Darrell Eugene Clark

Clark alleges his employment with the APD was "discriminatorily terminated" on June 25, 2020, after Clark assisted the FBI in an investigation of civil rights violations within the APD.  Clark also alleges the termination was in retaliation for grievances and an EEOC complaint filed against Chief King for racial discrimination and a hostile work environment.  Clark alleges that Defendant Terry was an active and directing participant in the investigation of the disclosure of civil rights violations in the APD.

Clark filed his EEOC charge on August 12, 2020, alleging: discrimination based on race, color, sex, and age; retaliation; disparate treatment; hostile work environment; and violation of whistleblower protection  ECF No. 11-3.  Clark received his right-to-sue notice on September 8, 2020.  ECF No. 11-4.

#### 2.    Reginald David Cooper

Reginald Cooper alleges his employment with the APD was "discriminatorily terminated" on July 20, 2020, after Cooper assisted the FBI in an investigation of civil rights violations within the APD.  Cooper also contends he was terminated in

retaliation for his filing grievances and an EEO complaint against Chief King, alleging a hostile work environment and discrimination. Cooper alleges that Defendant Terry was an active and directing participant in the investigation of the disclosure of civil rights violations in the APD.

Cooper filed his EEOC charge on July 20, 2020, alleging discrimination because of race, color, and age, and retaliation. ECF No. 11-5. Cooper received his right-to-sue notice on April 8, 2021. ECF No. 11-15 at 6.

### 3.     Cedric Linbert Green

Green alleges he was "discriminatorily demoted" to Sergeant with the APD on February 4, 2021, after Green assisted the FBI in an investigation of civil rights violations within the APD. Green also contends his demotion was in retaliation for having filed grievances and an EEOC complaint against the Police Chief, alleging a hostile work environment. Green further alleges that Defendant Terry was an active and directing participant in the investigation of the disclosure of APD civil rights violations.

Green filed an EEOC charge on March 22, 2021, alleging discrimination due to race and color, and retaliation. ECF No. 11-7. There is no right to sue notice for Green in the record.

### 4.     Glenn Hall

Glenn Hall alleges his employment with the APD was "discriminatorily terminated" on June 18, 2020, on false charges of political activity, due to racial

discrimination, hostile work environment, and violation of the whistle-blower statute. ECF No. 11-2 at 25-26. There is no EEOC charge for Glenn Hall in the record.

### 5.    Len Hall

Len Hall (the brother of Glenn Hall) alleges his employment with the APD was discriminatorily forced to resign on September 5, 2018 due to harassment by Chief King, including a false allegation that Hall had sexual relations while on duty. Hall also contends King retaliated against him after he resigned by giving bad references to Hall's prospective employers. ECF No. 11-2 at 6, 28; No. 11-8.

Len Hall filed an EEOC complaint on April 2, 2019, alleging racial discrimination, a hostile work environment, and retaliation. ECF No. 11-8. Len Hall received his right-to-sue notice on August 22, 2019. ECF No. 11-9.

### 6.    Juan Carlos Cruz

Cruz alleges a hostile work environment and constructive discharge from the APD in November 2016, after two racial insults by a "senior APD officer" (Farrell Gaspard, race not specified). Cruz complained, an investigation was initiated, and Cruz was told that disciplinary action had been taken against Gaspard, but that proved to be false. Cruz resigned rather than fact retaliation from Gaspard. ECF No. 11-2 at 23. There is no EEOC charge for Cruz in the record.

7.  **Vincent Parker**

Vincent Parker alleges a hostile work environment and constructive discharge from the APD in 2003, after he reported a Caucasian supervisor, Sgt. Donny Foster, for his racially derogatory comments and actions.  Parker alleges the Alexandria Municipal Fire & Police Civil Service board lessened the supervisor's discipline, and other Caucasian officers made comments that seemed threatening. ECF No. 11-2 at 19.  There is no EEOC charge for Parker in the record.

8.  **Martin Medgar Williams**

Martin Williams alleges that while he was employed by the APD, he called in sick.  Afterward, he was accused of traveling to New Orleans while on sick leave. Williams alleges that, in July 2002, he was "discriminatorily terminated" from the APD due to a hostile work environment and false charges of traveling while on sick leave.  Williams alleges he was forced to resign.  There is no EEOC charge for Williams in the record..

9.  **Marcus Ramon Kirk**

Kirk contends his June 2009 application for transfer within the APD to the Detective Division was discriminatorily denied, and, in September 2009, he was discriminatorily denied eligibility to take the Corporal's Exam.  After Kirk filed an EEOC complaint alleging discrimination in 2009, his 2011 application for transfer into the Detective Division was denied in retaliation for having filed the EEOC complaint.  Kirk filed another EEOC complaint for discrimination in 2011, after

which he was harassed and disciplined at the direction of Assistant Chief James Hay for parking in a disabled parking slot in the APD parking lot (despite having a disabled veteran parking license plate).

Kirk filed a third EEOC complaint for discrimination in 2014. Kirk alleges both racial discrimination and a hostile work environment. There is no EEOC charge for Kirk in the record.

### 10.    Remona Williams Casey

Casey contends she was denied employment with the APD in 2011 due to racial discrimination and a hostile work environment, even though she had a high score on the civil service entrance exam and a history of military service. The APD informed Casey that it had "enough female officers." ECF No. 11-1 at 21-22. There is no EEOC charge for Casey in the record.

### 11.    Richard George Franklin, Jr.

Franklin contends he was denied employment with the APD in 2010 or 2011 due to racial discrimination and a hostile work environment, despite that fact that Franklin scored well on the civil service entrance examination and had a Bachelor of Science degree in Criminal Justice. The APD records showed it was "unable to contact applicant Franklin," although the APD had his home phone number (with voice-mail), his cell phone number, and his email address. ECF No. 11-1 at 21. There is no EEOC charge for Franklin in the record.

12. **Kaster Darrell Jones**

Jones alleges he has been subjected to a hostile work environment at APD due discrimination, harassment, and false charges against him in 2009 and 2011. ECF No. 11-2 at 17.  There is no EEOC charge for Jones in the record.

13. **Deric Dionell Reed**

Deric Reed alleges that he was harassed due to his race when he applied for employment with the APD, which took from 2002 to 2005 to achieve.  Reed also contends that, in 2005, his supervisor (Lt. J.D. Griffin) used the "N" word to him and was not disciplined for it after Reed reported him.  In 2012 or 2013, an unidentified Caucasian sergeant made derogatory racial comment to Reed for asking questions during a briefing.  Reed resigned–and claims he was constructively discharged–in 2015.  ECF No. 11-2 at 20.

Although Reed's allegations are included in the Complaint, he is not named as a proposed new plaintiff.  There is no EEOC charge for Reed in the record.

14. **Markiz Marta Hood**

Hood contends that he was discriminatorily rejected for employment by the APD in 2014, 2017, and 2018, and was rejected on false grounds in 2019.  Although the evaluating psychologist told Hood he was "cleared to work for the APD," APD Assistant Chief Albert Bordelon, Jr. (on behalf of Chief King) called Hood and told him he would not be hired due to a "bad mental evaluation."  ECF No. 11-2 at 22. There is no EEOC charge for Hood in the record.

### 15. <u>Tyrika Trenea Love</u>

Love alleges that, when she applied for employment with the APD in 2017, Chief King advocated against her employment on the basis of her last name and the criminal history of some relatives. Love alleges that three of her employment applications to the APD were reported "lost" but later found buried on Defendant Chris Cooper's desk. In 2018, Love was admitted but then not allowed to enter the police academy in January 2018. She reapplied and was admitted in July 2018, but was terminated after she was told she had failed a test. Love was permitted to work for the dispatch until the police academy restarted in 2019, but Love was falsely accused of threatening an instructor and expelled. ECF No. 11-2 at 23-24. There is no EEOC charge for Love in the record. [2]

### 16. <u>Kerry Keith Simmons</u>

Simmons contends he was hired by the APD in 2014, after he had applied three times. In 2018, Simmons alleges he was criticized by his shift commander for issuing too many speeding tickets to white women. ECF No. 11-2 at 26. There is no EEOC charge for Simmons in the record.

---

[2] Although Love's allegations are included in the Complaint, she is not listed as a proposed new Plaintiff. For purposes of the Motion to Amend Complaint, Love will be evaluated as a proposed new plaintiff.

### 17. Mechelle Williams

Mechelle Williams[3] contends that, while she was employed by the APD in the Detective Division in 2018 or 2019, she complained of officers in the Detective Division setting up and using seized televisions and video game consoles that had been seized by officers (apparently illegally). Although not action was taken against the offending officer, Williams was transferred to the Patrol Division in retaliation for the complaint. Considering the transfer to be a demotion, Williams resigned from the APD, a constructive discharge. ECF No. 11-2 at 28. There is no EEOC charge for Mechelle Williams in the record.

### 18. Alton James Horn

Horn alleges that, while employed by the APD in 2020, he was assigned to the Detective Division as supervisor of the Juvenile Section. Horn contends that, when he called in sick on April 12, 2020, two Caucasian officers, Lt. Rachal and Officer Branton, purposefully drove past his residence to see if he was "faking it." Horn also alleges he was passed over for being offered a new vehicle due to his race. Despite Horn's seniority, the new vehicle was offered to a Caucasian with less seniority. ECF No. 11-2 at 30. There is no EEOC charge for Horn in the record.

---

[3] Although Mechelle Williams's allegations are included in the Complaint, she is not listed as a proposed new Plaintiff. For purposes of the Motion to Amend Complaint, she will be evaluated as a proposed new plaintiff.

### C. Plaintiff's allegations against named Defendants

#### 1. City of Alexandria

Plaintiffs allege the City of Alexandria has ultimate authority and control over, and responsibility for, the APD, including: oversight of decisions affecting funding of the APD; authorization of the APD's police force; responsibility for local policies, procedures, practices, decisions, and customs employed by the law enforcement officials, supervisors, and officers; and ultimate responsibility for proper hiring, training, and supervision of police officer. ECF Nos. 1; 11 at 9.

#### 2. Daryl Louis Terry

Plaintiffs allege that Terry was the Commissioner of Public Safety for the City of Alexandria and oversaw the City's police and fire departments. Plaintiffs also allege he directly supervised Chief King. ECF Nos. 1; 11 at 9-10.

#### 3. Jerrod Daniel King

Plaintiffs allege that King was the Chief of Police for the APD, the primary law enforcement officer, the policy-maker for the APD, and was the person responsible for hiring, training, and supervising all APD officers. ECF No. 1; No. 11.

#### 4. Patrick Ramon Vandyke

Vandyke is a proposed new Defendant. Plaintiffs allege Vandyke was the commander of the Alexandria Police Academy, the APD section responsible for the processing, screening, and training of applicants for employment as APD officers.

12

Plaintiffs further allege that Vandyke facilitated or acquiesced in the suppression and exclusion of minority applicants.  ECF No. 11-1 at 10.

### 5.    Christopher Louis Cooper

Chris Cooper is another proposed new Defendant.  Plaintiffs alleges that Chris Cooper was a member of the staff of the Alexandria Police Academy, and that he facilitated or acquiesced in the suppression and exclusion of minority applicants. ECF No. 11-1 at 10.

## II.    Law and Analysis.

Clark moves to add 15 new Plaintiffs, two new Defendants, three new causes of action, and a class action.

Defendants oppose the Motion to Amend, arguing:  (1) the "single-filing" rule is inapplicable; (2) lack of exhaustion as to some claims; (3) prescription as to some claims; and (4) inadequate allegations of pattern and practice of intentional and systematic discrimination by the City of Alexandria.

Defendants oppose the class action, arguing: (1) there is no commonality between individual issues or questions of fact; (2) the named plaintiffs are not all similarly situated; (3) there was no notice to Defendants of the class nature of Clark's EEOC charge; (4) compensatory and punitive damages require individual determinations; (5) a collective injunction is not possible; (6) there is no ascertainable class or subclass; and (7) there is no evidence to establish a class-

action claim for communications interception pursuant to 18 U.S.C. § 2511 (the eavesdropping claims).

Defendants have not opposed the addition of Christopher Cooper and Vandyke as Defendants, or the addition of claims under 18 U.S.C. § 2511, the LCHRA, and the LEDL.

## A.   Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure mandates that leave to amend "be freely given when justice so requires."   Fed. R. Civ. P. 15(a). Determining when justice requires permission to amend rests within the discretion of the trial court.   *See Bisby v. Garza*, 2008 WL 465320, at *1 (S.D. Tex. 2008) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971); *Nilsen v. City of Moss Point, Miss.,* 621 F.2d 117, 122 (5th Cir.1980)).   Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5thCir. 2003).   Absent any of these factors, leave should be granted.   *See Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004).

However, joinder of additional defendants in an action requires permission from the court, and the defendants must be involved in the same transaction or

occurrence, with common questions of law or fact, as the originally named defendants. *See* Fed. R. Civ. P. Rule 20.

Defendants argue that Plaintiffs' proposed amendment is futile. It is within the district court's discretion to deny a motion to amend if it is futile. *See Stripling v. Jordan Production Co., L.L.C.,* 234 F.3d 863, 872-73 (5th Cir. 2000). A proposed amended complaint is "futile" if it fails to state a claim upon which relief can be granted. *See id.* at 873. Therefore, on a motion to dismiss, the issue is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the proposed amended complaint states any valid claim for relief. *See id.* at 873.

### B.   Title VII Claims

#### 1.   Because the single-filing rule does not apply to Clark's EEOC complaint, only Clark, Reginald Cooper, Len Hall and Kirk have exhausted their administrative remedies under Title VII.

Defendants contend the proposed new Plaintiffs have failed to exhaust their administrative remedies. Plaintiffs argue that the single filing rule applies. Defendants respond that the new Plaintiffs cannot "piggy-back" onto Clark's EEOC claim under the single-filing rule because Clark failed to notify Defendants of the class-wide nature of his claims in his EEOC charge.

Employment discrimination plaintiffs must exhaust administrative remedies before they may pursue claims in federal court. *See Cargo v. Kansas City Southern*, 2009 WL 3012760, at *1–2 (W.D. La. 2009) (*citing Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378–79 (5th Cir. 2002), cert. den., 537 U.S. 1200 (2003)). Exhaustion

occurs when the plaintiff timely files a charge with the EEOC, his or her claim is dismissed by the agency, and the plaintiff receives statutory notice of right to sue. *See id.*

Because Louisiana is a deferral state, a plaintiff's charge of discrimination must be filed within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e5(e)(1).  A charge is deemed filed with the EEOC "upon receipt of the document."  29 C.F.R. § 1601.13(a)(4)(ii)(A); *see Cargo*, 2009 WL 3012760, at *1–2. Title VII provides that claimants have 90 days to file a civil action after receipt of such a notice from the EEOC, and that provision is strictly construed.  *See Taylor*, 296 F.3d at 379.

However, under the "single-filing rule," "an individual who has not filed an administrative charge can opt-in to a suit filed by any similarly situated plaintiff under certain conditions."  *See Cargo*, 2009 WL 3012760, at *1–2 (*citing Anson v. University of Texas Health Sciences Center at Houston,* 962 F.2d 539, 541 (5th Cir. 1992)).  The policy behind the rule is that "[i]t would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC."  *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 498 (5th Cir. 1968)).  "As long as the EEOC and the company are aware of the nature and scope of the allegations, the purposes behind the filing requirement are satisfied and no injustice or contravention of congressional intent occurs by allowing piggybacking."  *See Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1223 (5th Cir.

1995) *(overruled on other grounds by Desert Palace v. Costa,* 539 U.S. 90 (2003); *see also Bettcher v. The Brown Schools, Inc.,* 262 F.3d 492, 495 n. 3 (5th Cir. 2001) (stating "[t]he single filing rule has ... only been read to eliminate the need to file an EEOC charge when the purposes behind the charge-filing requirement have been met").

In *Bettcher,* the Fifth Circuit explained that there are three conditions that must be satisfied before a plaintiff may invoke the "single filing rule." *Bettcher,* 262 F.3d at 494–95. First, the plaintiff must be similarly situated to the person who actually filed the EEOC charge. *See Bettcher,* 262 F.3d at 494–95. Second, the charge must have provided some notice of the collective or class-wide nature of the charge. *See Bettcher,* 262 F.3d at 494–95. Finally, the individual who filed the EEOC charge must actually file a suit that the piggybacking plaintiff may join. *See Bettcher,* 262 F.3d at 494–95.

Notice of collective or class-wide actions in a formal administrative charge of discrimination is a necessary requirement under the single-filing rule. *See Cargo*, 2009 WL 3012592, at *2. "Failure to require some notice of class claims in the charge would require employers to treat all individual charges as potential class actions." *Cargo*, 2009 WL 3012592, at *2 (quoting *Anson,* 962 F.2d at 543). A formal administrative charge need not specify that the claimant purports to represent a class or other's similarly situated, but "there must be some indication that the grievance affects a group of individuals defined broadly enough to include

those who seek to piggyback on the claim." *Id.* "Such a claim alerts the EEOC that more is alleged than an isolated act of discrimination and affords sufficient notice to the employer to explore conciliation with the affected group." *Id.*

Clark, Reginald Cooper, Len Hall, and Kirk all filed EEOC claims and received right-to-sue notices. However, only Clark filed an action in Court after he received his right-to-sue letter. Therefore, Plaintiffs may seek to piggy-back onto Clark's EEOC claim only. *See Bettcher,* 262 F.3d at 494–95.

Clark filed a claim with the EEOC on August 12, 2020, alleging: (1) disparate treatment due to discrimination; (2) retaliation; (3) hostile work environment; and (4) violation of the whistleblower protection statute. ECF No. 11-3 at 1. That charge is supported by a letter written by Clark to the EEOC on July 25, 2020. ECF No. 11-3 at 2.

However, Clark's charge and letter did not provide the EEOC and Defendants with notice of the collective or class-wide nature of the charge. Clark's charge did not allege discriminatory policies, practices, or customs that were employed within the APD against all non-Caucasians, and did not cite incidents against other non-Caucasian employees. Instead, the charge dealt only with the incidents in which Clark was involved, and incidents in which Caucasian employees committed misconduct and were not terminated. Clark's EEOC claims did purport to apply to the proposed new Plaintiffs or to any other non-Caucasians who were

employed by, had sought employment with, or been terminated from employment with the APD.

Because Clark's EEOC complaint did not fulfill the notice requirement of the single-filing rule, the proposed new Plaintiffs cannot piggy-back onto Clark's EEOC claim. And because the single-filing rule does not apply, Glenn Hall, Cruz, Parker, Martin Williams, Horn, Love, Simmons, Franklin, Casey, Hood, Jones, Reed, and Mechelle Williams have not exhausted their administrative remedies for a Title VII claim. Therefore, Clark's Motion to Amend to add Title VII claims for Glenn Hall, Cruz, Parker, Martin Williams, Horn, Love, Simmons, Franklin, Casey, Hood, Jones, Reed, and Mechelle Williams should be denied as futile.

Green alleges he was "discriminatorily demoted" to Sergeant with the APD on February 4, 2021, in retaliation for having filed grievances and an EEOC complaint against Chief King and for having assisted the FBI in an investigation of civil rights violations within the APD. Green's EEOC charge was filed on March 22, 2021, after Clark's action was filed in this Court on December 7, 2020. Clark's Motion to Amend to add Green as a Plaintiff was filed on July 7, 2021. However, it does not appear that Green claim was dismissed by the EEOC or that he received a right-to-sue notice prior to pursuing an action in this Court through Clark's case.[4] ECF No. 11-7 at 1.

---

[4] No right-to sue notice for Green was included in Plaintiffs' exhibits. ECF No. 11.

Because Green has not shown that he exhausted his administrative remedies prior to pursuing an action in this Court, Plaintiffs' Motion to Amend to add Green's Title VII claims should also be denied as futile.

Therefore, only Clark, Reginald Cooper, Len Hall, and Kirk have exhausted their administrative remedies under Title VII.

### 2.    Title VII statute of limitation and the continuing violation theory.

Title VII claims–whether they are based on allegations of disparate treatment, disparate impact, hostile work environment, or retaliation–are subject to a statute of limitations that is tied to an administrative complaint process. That means that a plaintiff must first file a discrimination charge with the Equal Employment Opportunity Commission (EEOC) within 300 days of an alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1).

Upon obtaining a right to sue letter from the EEOC, a plaintiff then has ninety days to file a Title VII claim in district court.  *Taylor*, 296 F.3d at 379. Alleged unlawful employment acts that occur more than 300 days prior the filing of an EEOC charge are generally time-barred.  *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("[A] Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U.S.C. § 2000e–5(e)(1).").

However, "a plaintiff can support a Title VII claim with conduct occurring more than 300 days before filing an EEOC charge if the plaintiff can allege facts that could show that 'the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" *Reed v. Brady Trucking, Inc.*, 2019 WL 1244100, at *5 (S.D. Tex. 2019) (quoting *Morgan*, 536 U.S. at 120-21).[5]

The continuing violation theory has only been applied to hostile work environment claims, and is not applicable to claims of retaliation or disparate treatment. *See Heath v. Board of Supervisors for Southern University and Agricultural and Mechanical College,* 850 F.3d 731, 741 (5th Cir. 2017); *Stewart v. Mississippi Transportation Commission*, 586 F.3d 321, 328 (5th Cir. 2009)) ("Unlike in a case alleging discrete violations, a hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because her claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'") (quoting *Morgan,* 536 U.S. at 117); *Skaggs v. Van Alstyne Independent School District*, 2017 WL 77825, at *6 (E.D. Tex. 2017) ("The United States Supreme Court has made clear that the continuing violation doctrine does

---

[5] The "continuing violation" doctrine is limited in three ways: (1) the plaintiff must demonstrate that the "separate acts" are related, or else there is no single violation that encompasses the earlier acts; (2)  the violation must be continuing–intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window; and (3) the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to honor Title VII's remedial purpose without negating the particular purpose of the filing requirement. *See Stewart*, 586 F.3d at 328 (*citing Morgan,* 536 U.S. at 120).

not apply to discrimination and/or retaliation claims," but may apply to hostile work environment claims.).

A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Stewart*, 586 F.3d at 328 (quoting *Morgan,* 536 U.S. at 116).

Unlike in a case alleging discrete violations, a hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because the claim "is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice." *See Stewart*, 586 F.3d at 328 (citing *Morgan,* 536 U.S. at 115). Thus, a court may consider "the entire scope of the hostile work environment claim," including behavior alleged outside the 180–day window, "so long as any act contributing to that hostile environment takes place within the statutory time period." *See Stewart*, 586 F. 3d at 328 (citing *Morgan,* 536 U.S. at 105).[6]

### 3. <u>Kirk's Title VII claims are time-barred.</u>

Kirk incidents of racial discrimination that took place in June 2009, September 2009, and 2011.

---

[6] "As one circuit has helpfully described *Morgan*'s reasoning, a plaintiff's hostile environment claim 'is based on the cumulative effect of a thousand cuts, rather than on any particular action taken by the defendant,' so 'the filing clock cannot begin running with the first act, because at that point the plaintiff has no claim; nor can a claim expire as to that first act, because the full course of conduct is the actionable infringement.'" *Heath*, 850 F.3d at 737 (*quoting O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)).

Because the incidents alleged by Kirk are outside of the 300-day period preceding the filing of Clark's EEOC clam on August 12, 2020, the continuing violation theory is inapplicable and Kirk's Title VII claims are time-barred. Therefore, Clark's Motion to Amend (ECF No. 11) to add Kirk's Title VII claims should be denied as futile.

### 4.   <u>Len Hall's Title VII claims are time-barred.</u>

Len Hall alleges a incidents of racial discrimination and harassment that culminated in a constructive discharged from the APD on September 5, 2018, as well as subsequent retaliation by Chief King.  Len Hall also alleges that Chief King retaliated against him by giving bad references to his prospective employers.[7]  Len Hall filed an EEOC complaint on April 2, 2019, and received his right-to-sue notice on August 22, 2019.

Although the dates of all of Len Hall's claims are not given, he included all of his claims in his EEOC complaint that was filed on April 2, 2019.  Therefore, it is clear that all of Len Hall's claims, including post-employment retaliation, accrued prior to April 2, 2019.

---

[7] Title VII protects against post-employment retaliation.  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (limiting anti-retaliation protections to current employees would be destructive of the provision's primary purpose of "[m]aintaining unfettered access to statutory remedial mechanisms"); *Ikossi-Anastasiou v. Board of Supervisors of Louisiana State University*, 579 F.3d 546, 551 (5th Cir. 2009), cert. den., 559 U.S. 904 (2010).

Because the incidents alleged by Len Hall are outside of the 300-day period preceding the filing of Clark's EEOC clam on August 12, 2020, the continuing violation theory is inapplicable and Len Hall's Title VII claims are time-barred. Therefore, Clark's Motion to Amend (ECF No. 11) to add Len Hall's Title VII claims is denied as futile.

### 5.    Reginald Cooper's claims are not time-barred.

Reginald Cooper alleges his employment with the APD was "discriminatorily terminated" on July 20, 2020, after Cooper assisted the FBI in an investigation of civil rights violations within the APD.  Cooper contends he was terminated in retaliation for filing grievances and an EEOC complaint against Chief King, alleging a hostile work environment and discrimination.  Cooper alleges that Defendant Terry was an active and directing participant in the investigation of the disclosure of civil rights violations in the APD.

Cooper filed his EEOC charge on July 20, 2020, alleging discrimination and retaliation.  ECF No. 11-5.  Cooper received his right-to-sue notice on April 8, 2021, after Clark filed this action on December 7, 2020.  ECF No. 11-15 at 6.  Although Cooper's claims were not exhausted at the time Clark filed this action, they were exhausted when Clark filed this Motion to Amend to add Cooper as a Plaintiff.

Because Cooper's Title VII claims are not time-barred, Clark's Motion to Amend Complaint (ECF No. 11) to add Cooper's Title VII claims is granted.

### C.   Section 1983, LEDL, and LCHRA claims

#### 1.   One-year statute of limitation for § 1983 claims and the continuing violation theory.

There is no statute of limitations in 42 U.S.C. § 1983.  For these claims, a federal court generally must apply the state law statute of limitations that would govern an analogous state law cause of action.  *See Mitchell v. Crescent River Port Pilots Association*, 265 Fed. Appx. 363, 367 (5th Cir. 2008) (*citing Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660 (1987)).  Under this rule, the court would apply Louisiana one-year prescriptive period for torts.[8]  *See Mitchell*, 265 Fed. Appx. at 367 (*citing* La. C.C. art. 3492).

Where, the plaintiff's complaint on its face reveals that prescription has run, "the burden is on the plaintiff to show why the claim has not prescribed."  *Knighten v. Cave & McKay*, 32 F.3d 566, at *2 (5th Cir. 1994), cert. den., 513 U.S. 1080 (1995).

Plaintiffs allege a continuing violation theory due to a "hostile work environment."[9]  The continuing violation theory provides that where the last act

---

[8] Although Clark cites § 1981 in his Complaints, he concedes in his brief (ECF No. 14) that § 1983 applies to his claims and that the correct limitations period is one year.

[9] Section 1983 and Title VII are "parallel causes of action."  *Cervantez v. Bexar County Civil Service Commission,* 99 F.3d 730, 734 (5th Cir. 1996).  Accordingly, the "inquiry into intentional discrimination is essentially the same for individual actions brought under §§ 1981 and 1983, and Title VII."  *Lauderdale v. Texas Department of Criminal Justice, Institutional Division*, 512 F.3d 157, 166 (5th Cir. 2007) (citing *Wallace v. Texas Tech University,* 80 F.3d 1042, 1047 (5th Cir.1996)).

alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred. *See McGregor v. LSU Board of Supervisors*, 3 F.3d 850, 866 (5th Cir. 1993), cert. den., 510 U.S. 1131 (1994). The continuing violation doctrine applies the same to Title VII hostile work environment claims as it does to such claims brought under Section 1983. *See Heath*, 850 F.3d at, 739. Section 1983 claims allow Plaintiffs to sue Defendants individually for creating a hostile work environment, and they can prove harassment based on discrimination without an exhaustion requirement. *See Heath*, 850 F.3d at 739 (*citing Lauderdale*, 512 F.3d at 165–166).

Because the claimant must have a claim for a hostile work environment for the continuing violation theory to apply, pre-employment claims do not qualify for the continuing violation theory.[10]

### 2.    Limitation period for LEDL claims

Louisiana's anti-discrimination statutory provisions are governed by the one-year prescriptive period under La. R.S. 23:303(D). *See Casey v. Livingston Parish Communications District,* 2009 WL 577756, at *5 (5th Cir. 2009). Therefore, for the reasons assigned in the sections analyzing the limitations periods for the § 1983 claims, any claim prescribed under § 1983 would also be prescribed under the

---

[10] Pre-employment claims essentially allege discrimination in the formation of a contract, not in the "benefits, privileges, terms, and conditions of the contractual relationship," which is the language Congress added in the Civil Rights Act of 1991. *See Mitchell*, 265 Fed. Appx. at 368 (*citing* 42 U.S.C. § 1981(b)).

LEDL, La. R.S. 23:332.[11]    *See Butler v. Orleans Parish School Board,* 2001 WL 1135616, at *4 (E.D. La. 2001).

### 3.    <u>Limitations period for the LCHRA claims</u>

Clark also seeks to add claims for all plaintiffs pursuant to the LCHRA, La. R.S. 51:2231.[12]    The LCHRA is also governed by a one-year prescriptive period, pursuant to La. C.C. art. 3492.    *See King v. Phelps Dunbar, L.L.P.,* 98-C-1805 (La. 6/4/99), 743 So. 2d 181, 187 (citing *Williams v. Conoco, Inc.,* 860 F.2d 1306 (5th Cir. 1988)); *Roper v. Exxon Corp.,* 27 F. Supp. 2d 679,  684 (E.D. La. 1998), aff'd, 198 F.3d 242 (5th Cir. 1999).    Therefore, for the reasons assigned in the sections analyzing the limitations periods for the § 1983 claims, any claims prescribed under § 1983 are also be prescribed under the LCHRA.

---

[11] The analysis applicable to a plaintiff's Title VII claims also governs a plaintiff's state law claims under Louisiana's anti-discrimination laws.  *See Minnis v. Board of Supervisors of Louisiana State University & Agricultural & Mechanical College,* 55 F. Supp. 3d 864, 884–85 (M.D. La. 2014), *aff'd,* 620 Fed. Appx. 215 (5th Cir. 2015) (citing *Smith v. Amedisys, Inc.,* 298 F.3d 434, 448 (5th Cir. 2002); *Wyerick v. Bayou Steel Corp.,* 887 F.2d 1271, 1274 (5th Cir. 1989)).

[12] La. R.S. 51:2231, *et seq.,* provides for the execution of federal anti-discrimination laws in the State of Louisiana and creates the Louisiana Commission on Human Rights.  The Commission has the power to adjudicate claims of employment discrimination pursuant to La. R.S. 51:2231(C) and 51:2257.  *See King,* 743 So.2d at 187.

The stated purpose and intent of the Act is to execute in Louisiana the policies embodied in the several federal civil rights acts. La. R.S. 51:2231. *See Clouse v. Boise Cascade Corp.,* 955 F. Supp. 670, 673 (W.D. La. 1997), *aff'd,* 131 F.3d 140 (5th Cir. 1997).  The Act's enabling legislation clearly evinces an intent to adhere to parallel federal civil rights laws, as applied and interpreted by the branches of the federal government.  *See id.*

4. **Franklin's and Casey's § 1983 (and LEDL and LCHRA) pre-employment racial discrimination claims are time-barred.**

Franklin, Casey, Hood, and Love allege racial discrimination pursuant to § 1983 due to Defendants' failure to employ them as APD officers.

Casey contends she was denied employment with the APD in 2011. Franklin contends he was denied employment with the APD in 2010 or 2011.

Prior to 1991, the Supreme Court recognized a cause of action under § 1983 for protection against the refusal to enter into a contract with someone on the basis of race. *See Mitchell*, 265 Fed. Appx. at 367 (*citing Patterson v. McLean Credit Union,* 491 U.S. 164, 176-77 (1989)).

Franklin, Casey, and Hood never entered into employments contract with the APD. Therefore, the proper statute of limitations to be applied in a § 1983 action that asserts § 1981 pre-employment rights, and alleges racial discrimination, is the state tort statute of limitations: Louisiana's one-year prescriptive period. *See Mitchell*, 265 Fed. Appx. at 368; *see also Jones v. Board of Supervisors of the University of Louisiana System*, 2015 WL 7281614, at *6 (E.D. La. 2015).[13]

---

[13] Pre-employment claims essentially allege discrimination in the formation of a contract, not in the "benefits, privileges, terms, and conditions of the contractual relationship," which is the language Congress added in the Civil Rights Act of 1991. *See Mitchell*, 265 Fed. Appx. at 368 (*citing* 42 U.S.C. § 1981(b)).

Because Franklin's and Casey's discrimination claims are clearly outside of the one-year time-period preceding December 7, 2020, when Clark filed his action,[14] their § 1983, LEDL, and LCHRA claims are time-barred.

> 5. **The pleadings do not clearly show that Hood's and Love's § 1983 (and LEDL and LCHRA) pre-employment racial discrimination claims are untimely.**

Hood alleged a series of discriminatory acts through refusal to hire him, the last of which occurred in 2019, and may be timely. Because it is not clear on the face of the pleadings when in 2019 Hood's claim of discriminatory refusal to hire occurred,[15] the Court cannot ascertain whether Hood's 2019 claim is time-barred.

Love contends she was rejected for employment by the APD in 2017, 2018, and 2019 due to racial and gender discrimination. Love alleges that Chief King advocated against her employment on the basis of her last name and the criminal history of some of her relatives. Love was told she had been admitted to the police academy but not allowed to enter in January 2018. Love she reapplied and was admitted in July 2018, but was terminated after she was told she had failed a test. Love was again allowed to enter the police academy in 2019, but alleges she was

---

[14] For purposes of this motion, and to determine whether the claims are timely, the Court assumes the proposed amendment relates back to the original complaint. Defendants did not argue otherwise.

[15] Hood alleges that, after the testing psychologist told Hood he was "cleared to work for the APD," APD Assistant Chief Albert Bordelon, Jr. (on behalf of Chief King) called Hood and told him he would not be hired due to a "bad mental evaluation."

expelled when she was falsely accused of threatening an instructor.  Again, it is not clear on the face of the pleadings when the events alleged by Love occurred in 2019.

The Court is unable to ascertain whether Hood's and Love's 2019 claims fall outside of the one-year limitation period prior to December 7, 2020, when Clark's original Complaint was filed.  If they are not time-barred, then the incidents prior to 2019 that they allege may also not be time-barred, under the continuing violation theory.  Defendants oppose Clark's amendment, contending generally that "many of the claims" are time-barred, without discussion of the effect of the statute of limitation as to the claims of each proposed new Plaintiff.[16]

Because it is not clear from the face of the pleadings that Hood's and Love's claims are time-barred, the Court cannot find the amendment is futile.  Clark's Motion to Amend Complaint (ECF No. 11) to add Hood's and Love's § 1983, LEDL, and LCHRA claims for discrimination should be granted.

6.  **The § 1983 (and LEDL and LCHRA) claims of Len Hall, Cruz, Parker, Martin Williams, Kirk, Jones, Reed, and Simmons are time-barred.**

Len Hall alleges constructive discharge due to racial discrimination on September 5, 2018. Cruz alleges a hostile work environment and constructive discharge from the APD in November 2016.  Vincent Parker alleges a hostile work environment and constructive discharge from the APD in 2003.  Martin Williams

---

[16] The City of Alexandria should have 2019 records that show when Hood underwent his psychological test and when he was told he had not passed it and would not be hired, as well as when Love was expelled from the police academy in 2019.

alleges that, in July 2002, he was "discriminatorily terminated." Kirk alleges incidents of race discrimination that occurred in 2009, 2011, and 2014. Jones alleges incidents of racial discrimination, harassment, and false charges against him in 2009 and 2011. Reed alleges incidents of racial discrimination that culminated in a constructive discharged in 2015. Simmons alleges incidents of racial discrimination in 2014 and 2018.

Since all of these alleged incidents occurred more than one year prior to December 7, 2020, when Clark's original Complaint was filed,[17] they fall outside of the one-year limitation period and are time-barred. Because amending his complaint to add these claims would be futile, Clark's Motion to Amend (ECF No. 11) to add § 1983, LEDL, and LCHRA claims for Len Hall, Martin Williams, Parker, Cruz, Kirk, Jones, Reed, and Simmons should be denied.

### 7.   The § 1983 (and LEDL and LCHRA) claims of Reginald Cooper, Green, Glenn Hall, Horn, and Mechelle Williams are not time-barred.

Reginald Cooper alleges his employment with the APD was "discriminatorily terminated" on July 20, 2020. Green alleges he was "discriminatorily demoted" to Sergeant with the APD on February 4, 2021. Glenn Hall alleges his employment with the APD was "discriminatorily terminated" on June 18, 2020. Horn alleges racial discrimination that occurred in 2020.

---

[17] Again, for purposes of this motion, and to determine whether the claims are timely, the Court assumes the proposed amendment relates back to the original complaint. Defendants did not argue otherwise.

Because these factual allegations fall within the one-year period preceding the December 7, 2020 filing of Clark's complaint,[18] they are not time-barred. Clark's Motion to Amend (ECF No. 11) to add § 1983, LEDL, and LCHRA claims for Reginald Cooper, Green, Glenn Hall, and Horn should be granted.

Mechelle Williams alleges racial discrimination, retaliation, and constructive discharge in 2018 or 2019. Because it is not clear from the pleadings whether Mechelle Williams' claims are time-barred, Clark's Motion to Amend (ECF No. 11) to add Michelle Williams's § 1983, LEDL, and LCHRA claims should also be granted.

> ### 8. Plaintiffs (who) state a § 1983 claim for race discrimination against the City of Alexandria.

Defendants contend that Plaintiffs' "bare" assertions of pattern and practice are devoid of specific facts to show a "pattern of intentional and systematic racial discrimination by the City." Defendants argue that Plaintiffs failed to identify any persons, facts, or "specifics."

Clark raised a claim of race discrimination by the City of Alexandria through "pattern and practice" in his original Complaint. Therefore, that claim is not new to the Amended Complaint, although Clark makes additional factual allegations to support that claim. The issue of the adequacy of Plaintiffs' allegations of municipal

---

[18] For purposes of this motion, and to determine whether the claims are timely, the Court assumes the proposed amendment relates back to the original complaint. Defendants did not argue otherwise.

liability is not properly before the Court on Clark's Motion to Amend, and should not be considered further.

### D.   Clark has not met the requirements for class certification.

Clark's Amended Complaint sets forth a class and subclass for his class action claims pursuant to § 1983 and Title VII.  Defendants contend Clark has not met the requirements for a class action.

A class may be certified under Rule 23(b)(3) only it meets the four prerequisites found in Rule 23(a) and the two additional requirements found in Rule 23(b)(3).  *See Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 623 (5th Cir. 1999), *cert. den.*, 528 U.S. 1159 (2000).  Under Fed. R. Civ. P. 23(a), an action may be maintained as a class action if it meets the criteria of numerosity, commonality, typicality, and adequacy of representation.  *See McGrew v. Texas Board of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995).  The requirements for Rule 23(b) are "predominance" and "superiority."  *See Mullen*, 186 F.3d at 624 (citing *Amchem Products v. Windsor*, 521 U.S. 591, 615 (1997)).  The district court has wide discretion in deciding whether or not to certify a proposed class.  *See McGrew*, 47 F.3d at 161; *see also Mullen*, 186 F.3d at 624.

The numerosity requirement is met where the class is so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a); *Mullen*, 186 F.3d at 624.  The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.  *See General Telephone Company of the*

*Northwest, Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318, 330 (1980).  It imposes no mechanical rules, turning instead on the practicability of joining all class members individually.

While the number of claimants is relevant to this determination, a court may consider other factors.  *See Watson v. Shell Oil Co.*, 979 F.2d 1014, 1022 (5th Cir. 1992).  Other relevant factors include the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim.  *See Mullen,* 186 F.3d at 624-25 (*citing Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

Clark's proposed class consists of: (1) African-Americans and Hispanics who were denied employment as police officers in the APD during the "continuing violation"; (2) African Americans who were employed as police officers in the APD during the "continuing violation" and who were subjected to discriminatory practices with regard to duty assignments; and (3)African Americans and Hispanics who were employed as police officers in the APD during the "continuing violation period" and were subjected to the APD's discriminatory compensation practices.  Clark also proposes a subclass for women.

Of the proposed new named plaintiffs, only six remain, two of whom have Title VII claims and six of whom have other claims, also.  It is clear that many of the class members proposed by Clark will meet the same exhaustion and time-limitation obstacles that eliminated nine of the proposed new Plaintiffs.

Because, under the continuing violation theory,[19] the possible new plaintiffs must each have at least one timely claim that accrued no more than a year prior to December 15, 2020, the filing date of Clark's suit, potential plaintiffs will be easily ascertainable from Defendants' records.  Because the APD has fewer than 200 employees, few of whom are, apparently, non-Caucasian, the number of potential new plaintiffs will not be too numerous to make joinder impracticable.

Accordingly, because Clark has not met the numerosity requirement, Clark's Motion to Amend Complaint to add a class action should be denied.

### E. Plaintiffs have not made a class-wide claim under 18 U.S.C. § 2511.

Defendants argue that Plaintiffs cannot state a class action under 18 U.S.C. § 2511 for a privacy violation/interception claim.  Because Clark has not made a class action claim pursuant to § 2511, but instead makes that claim only at to Clark, Cooper, and Green, Defendants' argument is moot.

### F. Plaintiffs' retaliation and whistleblowing claims are not opposed.

Defendants have not argued that the claims by Clark, Cooper and Green pursuant to 18 U.S.C. § 1513 for retaliation, and La. R.S. 23:967 for whistleblowing, are futile, or otherwise opposed these claims.  Therefore,  Clark's Motion to Amend

---

[19] Also, as discussed above, the continuing violation theory applies only to hostile work environment claims.

To the extent Clark appears to argue the continuing violation theory applies collectively to suspend prescription amongst them all if even one can show timely claims, that is not the law.  The Court has found not cases applying the continuing violation theory collectively amongst multiple Plaintiffs, nor has Clark cited any.

Complaint to add those claims (for Plaintiffs Clark, Cooper, and Green) (ECF No. 11) should be granted.

### G.    Clark's addition of two new Defendants is not opposed.

Clark moves to Amend to add Patrick Ramon Vandyke ("Vandyke") and Christopher Louis Cooper ("Chris Cooper") as Defendants. Vandyke was the Commander of the Alexandria Police Academy, the APD section responsible for the processing, screening, and training of applicants for employment as APD officers. Chris Cooper was a staff member at the Alexandria Police Academy.

Clark alleges in the Amended Complaint that both defendants were involved in preventing minority applicants from being hired by the APD. Clark's allegation against Cooper and Vandyke involves the same claim of racial discrimination that he alleges against the original Defendants. Moreover, Defendants have not opposed the addition of Cooper and Vandyke as Defendants.

It is still early in the proceedings of this case. Defendants have not argued or shown undue delay, bad faith or dilatory motive on the part of Clark, undue prejudice to Defendants, or futility of the amendment to add these new Defendants.

Therefore, Clark's Motion to Amend Complaint (ECF No. 11) to add Patrick Ramon Vandyke and Christopher Louis Cooper as Defendants should be granted.

III.   <u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that Clark's Motion to Amend Complaint (ECF No. 11) be GRANTED IN PART AND DENIED IN PART as follows:

Clark's Motion to Amend Complaint (ECF No. 11) to add a class action should be DENIED.

Clark's Motion to Amend Complaint (ECF No. 11) to add Plaintiffs should be: (1) GRANTED IN PART as to Reginald David Cooper, Cedric Linbert Green, Glenn Hall, Markiz Marta Hood, Tyrika Trenea Love, Alton James Horn; and (2) DENIED IN PART as to Len Hall, Juan Carlos Cruz, Vincent Parker, Martin Medgar Williams, Marcus Kirk, Richard George Franklin, Jr., Kaster Darrell Jones, Deric Dionelle Reed, Kerry Keith Simmons, Mechelle Williams, and Remona Williams Casey.

Clark's Motion to Amend Complaint (ECF No. 11) to add Patrick Ramon Vandyke and Christopher Louis Cooper as Defendants should be GRANTED.

Clark's Motion to Amend Complaint (ECF No. 11) to add Plaintiff Clark's, Cooper's, and Green's claims pursuant to 18 U.S.C. § 1513 and La. R.S. 23:967 should be GRANTED.

As to the specific claims raised by the Plaintiffs:

For Clark, Reginald David Cooper and Cedric Linbert Green, Clark's Motion to Amend Complaint (ECF No. 11) should be GRANTED as to all claims.

For Glenn Hall, Clark's Motion to Amend Complaint (ECF No. 11) should be GRANTED on the § 1983, LEDL, and LCHRA claims, and should be DENIED on the Title VII claims.

For Markiz Marta Hood, Clark's Motion to Amend Complaint (ECF No. 11) should be GRANTED on the § 1983, LEDL, and LHCRA claims and DENIED on the Title VII claims.

For Tyrika Trenea Love, Clark's Motion to Amend Complaint (ECF No. 11) should be GRANTED on the § 1983, LEDL, and LHCRA claim and DENIED on the Title VII claims.

For Alton James Brown, Clark's Motion to Amend Complaint (ECF No. 11) should be GRANTED on the § 1983, LEDL, and LCHRA claims and DENIED on the Title VII claims.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

SIGNED on Tuesday, February 22, 2022.

Joseph H.L. Perez-Montes
United States Magistrate Judge